**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **Elgin Piner and Jerry Dingus,** | : | |
| **Individually and on behalf of other** | : | |
| **members of the general public similarly** | : | Case No. 2:17-cv-902-EAS-KAJ |
| **situated,** | : | |
| | : | |
| **Plaintiffs,** | : | Judge Edmund A. Sargus |
| | : | |
| **v.** | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| **FreedomRoads, LLC, Camping World,** | : | |
| **Inc., and Sirpilla RV Centers, LLC,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |
| | : | |

**DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFFS' PRE-DISCOVERY
MOTION FOR CONDITIONAL CLASS CERTIFICATION AND COURT-
SUPERVISED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS PURSUANT TO 29
U.S.C. §216(B)**

## I.      INTRODUCTION

Plaintiffs Elgin Piner ("Piner") and Jerry Dingus ("Dingus") disingenuously urge this

Court to swiftly grant their motion to conditionally certify a putative collective of thousands of

individuals based on the premise that the statute of limitations continues to run on each putative

collective members claims under the Fair Labor Standards Act ("FLSA"), without

acknowledging that Defendants have offered to stipulate to toll the limitations period for the

putative collective members FLSA claims in exchange for Plaintiffs' agreement to stay these

proceedings in lieu of the Supreme Court's pending decision in *Morris*, a consolidated appeal

regarding the enforceability of class and collective action waivers within arbitration proceedings,

such as the agreements executed by both Piner and Dingus in this matter. (*See* Dkt. No. 8.)[1] Rather than unnecessarily invite thousands of individuals to join this action as Plaintiffs before a ruling in *Morris* is issued and the validity of Plaintiffs' arbitration agreements is decided, Defendants respectfully request that the Court toll the statute of limitations and stay these proceedings.

Should the Court address the merits of Plaintiffs' motion, the Court should deny this motion on the grounds that Plaintiffs' have failed to identify any individuals with whom they are similarly situated or a common unlawful policy or procedure that applied to both them and any similarly situated employees. Rather, Plaintiffs' premature motion reveals their lack of personal knowledge regarding the variety of service technician compensation plans utilized by Defendant FreedomRoads' over 130 locations. Given the wide variety of compensation plans utilized to compensate service technicians and the individualized nature of Defendants' affirmative defenses related to those compensation plans, it would be impossible for Plaintiffs to prove their FLSA claims on a representative basis and their motion for conditional certification should, therefore, be denied.

## II.    PROCEDURAL POSTURE

On October 17, 2017, Piner filed a class and collective action lawsuit naming Defendants FreedomRoads and Sirpilla and asserting claims under the FLSA and Ohio's wage and hour laws. (Dkt. No. 1.)    On January 18, 2018, Piner and Dingus filed an Amended Complaint adding Dingus as a named-plaintiff and Defendant CWI as a defendant. (Dkt. No. 2.)    In the Amended Complaint, Plaintiffs generally allege that they "were not paid one and one-half times

---

[1] *Murphy Oil, U.S.A. v. NLRB*, 808 F.3d 1013 (5th Cir. 2015), *cert. granted* (U.S. Jan. 13, 2017) (No. 16-307); *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147 (7th Cir. 2016), *cert granted* (U.S. Jan. 13, 2017) (No. 16-285); *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *cert granted* (U.S. Jan. 13, 2017) (No. 16-300) (consolidated appeal collectively referred to as "*Morris*").

their regular rates of pay ("overtime rate") for all hours worked in excess forty (40)" and seek to represent a collective of individuals pursuant to 29 U.S.C. § 216(b) with whom they claim to be similarly situated, which they define as: "All of Defendants' current and former service technicians, RV service technicians, or equivalent positions who worked over 40 hours in any workweek for the period beginning three years immediately preceding the filing of the Complaint." (*See id.*, ¶¶ 50, 58.)

Defendants filed their Answer and Affirmative and Additional Defenses to the Amended Complaint on February 15, 2018. (Dkt. No. 7.) Defendants denied that Plaintiffs were improperly compensated and that they were similarly situated to the putative collective members. (*See id.*) Defendants also asserted numerous affirmative defenses, including: 1) Plaintiffs had both signed both signed enforceable and binding agreements with Defendant FreedomRoads waiving any right to pursue the claims brought in this lawsuit on a collective or classwide basis and further requiring them to pursue the claims asserted in this lawsuit through binding arbitration; and 2) Plaintiffs claims were barred because they were not entitled to overtime pursuant to 29 U.S.C. §§ 207(i) and 213(b)(10). (*See id*, pp. 11-12.) Defendants also filed a Motion to Stay on February 15, 2018 requesting that the Court stay these proceedings in anticipation of the U.S. Supreme Court's pending decision in *Morris*. (Dkt. No. 8.)

Plaintiffs filed their Motion for Conditional Certification on February 19, 2018. (Dkt. 10.) In their motion, Plaintiffs argued that this matter should be conditionally certified now and that notice should issue to putative collective members because of the "lack of a class-wide tolling of the statute of limitations in FLSA cases." (*Id.*, p. 7.) Upon receipt of Plaintiffs' motion, Defendants' counsel contacted Plaintiffs' counsel on February 21, 2018, and offered to agree to toll the statute of limitations for all putative collective members if Plaintiffs would agree

to a stay of these proceedings pending the Supreme Court's decision in *Morris*. (Declaration of Michael Short ("Short Dec."), ¶ 2.) Plaintiffs' counsel declined this offer. (*Id.*)

Plaintiffs filed their response to Defendants' Motion to Stay on February 28, 2018. (Dkt. No. 11.) In their response, Plaintiffs again argued that notice should issue immediately to putative collective members in order to avoid prejudice to these individuals because "the commencement of a collective action under § 216(b) does not toll the statute of limitations period for plaintiffs who have failed to opt-in." (*Id.*, p.8.) Plaintiffs argued that, in the alternative, that if "the Court determines that a stay is appropriate, at the very least the Court should find that the Putative Class Members are subject to equitable tolling." (*Id.*, p. 10-11.) Given that Plaintiffs' counsel appeared to be seeking the same relief that Defendants' had offered to stipulate to on February 21, 2018, Defendants' counsel reached out to Plaintiffs' counsel again on March 1, 2018 and again offered to stipulate to toll the statute of limitations for putative collective members if Plaintiffs would agree to stay this case pending the Supreme Court's decision in *Morris*. (Short Dec. ¶ 3, Ex. A.) Plaintiffs' counsel rejected this compromise, despite having requested this very relief in their response to Defendants' motion to stay. (*Id.*)

## III. RELEVANT FACTUAL BACKGROUND

### A. Defendant FreedomRoads Compensates Service Technicians Under A Variety Of Compensation Plans.

Defendant FreedomRoads is the country's largest recreational vehicle dealer network that operates in approximately 130 locations across 36 states. (Whinnery Dec. ¶ 2.) FreedomRoads currently employs approximately 1637 service technicians at these locations. (*Id.*, ¶ 3.)

Local management at each location exercises discretion over how service technicians are compensated in consultation with the appropriate Regional Service Director, Market Manager and Senior Vice President, and within the limitations set by state and federal requirements. (*Id.*,

¶ 4.) Many, if not all, of these locations compensate service technicians on several different compensation plans based on a variety of factors, including each service technicians' experience level, skill set, and the agreement management reaches with each individual service technicians. (*Id.*, ¶ 5.) Because service technicians are in high demand, they exercise a great deal of bargaining power when negotiating their compensation with FreedomRoads. (*Id.*, ¶ 6.) Given the high demand for service technicians, FreedomRoads works with each individual service technician to craft a compensation plan that both agreeable to both parties. (*Id.*)

Because of the individual nature of each service technician's compensation plan, each of the approximately 130 locations compensates service technicians using a variety of compensation plans. (*Id.*, ¶ 7.) For example, the London, Ohio location, where Piner was employed and where Dingus is currently employed, currently employs approximately 16 service technicians. (*Id.*, ¶ 8.) Of those 16 service technicians, several technicians are compensated on an hourly, overtime eligible compensation plan and are paid 1.5 times their regular rate for any hours they work over 40 in a workweek. (*Id.*) Others are paid on a flat rate billed hour system with a minimum hourly rate guarantee and a minimum number of guaranteed billable hours. (*Id.*) These technicians are classified as exempt and are not overtime eligible. (*Id.*) Other technicians at the London, Ohio location, typically the more experience technicians, are compensated on a pure flat rate billable hour system with no guaranteed hourly rate or minimum amount of billable hours. (*Id.*) These technicians are also classified as exempt and are not overtime eligible. (*Id.*)

Other FreedomRoads locations employ other types of compensation plans to compensate service technicians. For example, at some locations service technicians are paid on a "split rate" system under which they receive an hourly rate and are also paid a flat rate for jobs they perform.

(*Id.*, ¶ 9.)   These technicians are typically classified as non-exempt and paid overtime based on their regular rate for any hours they work in excess of 40 in a workweek.  (*Id.*)   At some locations, service technicians are paid on the flat rate systems described above, but are also classified as non-exempt and paid their regular rate for any hours they work in excess of 40 in a workweek.  (*Id.*, ¶ 10.)   Again, each location's decision regarding how to compensate each individual service technician depends on state and federal compensation requirements and negotiations between the location and the individual service technician.  (*Id.*, ¶¶ 5-7.)

### B.   Plaintiffs' Employment With FreedomRoads As Service Technicians

Plaintiff Piner worked as a service technician for Defendant FreedomRoads from on or about April 6, 2015 until on or about October 10, 2017.  (*Id.*, ¶ 11.)   Piner worked at a dealership located in London, Ohio.  (*Id.*)   Piner was initially paid as an hourly, non-exempt employee.  (*Id.*)   Thereafter, Piner was paid $21.33 for each flat rate hour he billed with a minimum guarantee of 30 flat rate hours per week.  (*Id.*)   During most weeks, Piner exceeded the 30 hourly minimum.  (*Id.*)   Piner was not overtime eligible under this flat rate with a guaranteed minimum system.  (*Id.*)   Eventually, Piner was moved to a flat rate compensation plan with no guaranteed minimum of flat rate hours.  (*Id.*)   Piner was not overtime eligible under this flat rate compensation plan.  (*Id.*)

Plaintiff Dingus worked as a service technician for FreedomRoads from on or about April 27, 2015 until on or about March 3, 2018 at the same London, Ohio location.  (*Id.*, ¶ 12 .)   For the first sixty days of his employment, Dingus was paid $21.33 for each flat rate hour he billed with a minimum guarantee of 30 flat rate hours per week.  (*Id.*, ¶ 13.)   During most weeks, Dingus exceeded the 30 hourly minimum.  (*Id.*)   Dingus was not overtime eligible under this flat rate with a guaranteed minimum system.  (*Id.*)   Eventually, Dingus was moved to a flat rate compensation plan with no guaranteed minimum of flat rate hours.  (*Id.*, ¶ 14.)   Dingus was not

overtime eligible under this flat rate compensation plan.  (*Id.*)

## IV.    LEGAL ARGUMENT

### A.    Defendants Have Offered A Reasonable Compromise That Protects The Putative Collective Members While Avoiding Unnecessary Complication Of These Proceedings.

Before reaching the merits of Plaintiffs' motion for conditional certification, Defendants respectfully request that the Court consider Defendants' Motion to Stay and Defendants' offer to stipulate to tolling the statute of limitations on behalf of the entire putative collective while that motion is pending and during the course of any stay, should the Court grant Defendants motion. Should the Court's decision in *Morris* find that arbitration agreements between employees and their employer that contain class and collective action waivers are valid and binding, then Defendants will immediately move to compel Piner and Dingus to pursue their claims through arbitration on an individual basis based on the arbitration agreements they signed out the outset of their employment with FreedomRoads.   Given that FreedomRoads' arbitration program is compulsory, Defendants anticipate that the vast majority, and likely all, of the putative collective members signed similar arbitration agreements that, if valid, would prohibit them from participating in a collective action such as the case at bar.

Should the Court grant Plaintiffs' motion for conditional certification and allow notice to issue to the putative collective members inviting them to opt-in to this lawsuit, a sizable percentage of the putative collective members will inevitably file consent to join the lawsuit as party plaintiffs.   In short, granting Plaintiffs' motion for conditional certification before the *Morris* decision will likely unnecessarily complicate this lawsuit procedurally by inviting hundreds of individuals to opt-in to this lawsuit, only to force Defendants to move to compel each of them to arbitrate their claims individually.

Contrary to Plaintiffs' arguments, none of the putative collective members will suffer any

prejudice if the Court grants Defendants' motion to stay and grants Plaintiffs' request to toll the statute of limitations for each putative collective member (which Defendants have offered to stipulate to) and does not decide Plaintiffs' motion for conditional certification at this procedural posture. Each of the putative collective members' claims will be preserved by the tolling. Plaintiffs' concerns regarding putative class members' last known addresses and contact information no longer being valid are the same concerns as those present in any collective action. Plaintiffs' counsel or a settlement administrator will inevitably be able to track down new addresses for any individuals whose addresses are no longer valid through easily accessible databases. In light of the above, the Court should grant Defendants' motion to stay and, specifically, stay its decision on Plaintiffs' motion for conditional certification until after a decision has been rendered in *Morris*.

### B. "Conditional Certification" and Plaintiff's Burden of Proof.

In *Hoffman-LaRoche, Inc. v. Sperling*, the Supreme Court held that district courts "have discretion, in appropriate cases . . . to implement" the collective action mechanism under Section 216(b) "by facilitating notice to potential plaintiffs." 493 U.S. 165, 169 (1989). Here, the Court must decide whether this is an "appropriate" case to issue notice, regardless of the applicable standard based upon the existing evidentiary record.

The FLSA does not require or authorize "conditional certification" (as opposed to any other type of "certification") of a collective action, *Myers v. The Hertz Corp.*, 624 F.3d 537, 555 n.10 (2nd Cir. 2010), and this Court is not bound by the so-called "two-tiered" approach or a "lenient" standard urged by Plaintiffs to determine whether all "service technicians" or "RV service technicians" are similarly situated nationwide. *Wilson v. Guardian Angel Nursing, Inc.*, 2008 U.S. Dist. LEXIS 92250, *10 (M.D. Tenn., Nov. 6, 2008). The Sixth Circuit has observed that "plaintiffs are similarly situated when they suffer **from a single, FLSA-violating policy,**

**and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs**." *O'Brien v. Ed Donnelly Enters., Inc.*, 574 F.3d 567, 584 (6th Cir. 2009) (emphasis added). "Most courts have required plaintiffs to produce a factual basis for the allegation of class-wide FLSA violations" before the court will agree to intervene and facilitate notice. *Lewis v. The Huntington National Bank*, 789 F. Supp.2d 863, 867 (S.D. Ohio 2011). Plaintiffs bear the burden of evidentiary proof, whether described as "lenient," "modest" or otherwise, that demonstrates that they and the class they propose to represent are "similarly situated." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). At this stage, therefore, Plaintiffs must establish a "factual basis" showing that Defendants have implemented a policy or some other nationwide practice that results in broad-ranging statutory violations of the FLSA – violations that can be established based upon representational testimony or other common proof.

   C.   **Plaintiffs Have Not Established A Factual Basis Reflecting A Common Unlawful Policy Or Practice.**

   Plaintiffs fail to meet their burden of demonstrating that similarly situated employees exist and that collective action treatment is proper because they have presented any evidence that Defendants engaged in a common policy or practice that violated the FLSA with respect to their own compensation, let alone the hundreds of other service technicians with whom the claim to be similarly situated. District courts in the Sixth Circuit have considered the following factors when considering whether plaintiffs have made the required factual showing at the initial stage: "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; whether evidence of a widespread discriminatory plan was submitted[;] and whether

as a matter of sound class management, a manageable class exists." *Flexter v. Action Temp. Servs., Inc.*, 2016 U.S. Dist. LEXIS 188403, at *6-7 (S.D. Ohio Mar. 25, 2016).[2]

### 1.   Plaintiffs Have Not Identified Other Similarly Situated Individuals.

Plaintiffs have not met their burden of identifying other similarly situated individuals.  In their Complaint and in their motion for conditional certification Plaintiffs broadly argue that they are similarly situated to any service technician employed by Defendants who was not paid overtime when they worked in excess of 40 hours in a workweek.  (See Dkt. No. 7, p. 10, Dkt. No. 10, p. 10).  However, Plaintiffs' declarations submitted in support of this motion clearly reflect that their knowledge is limited to their own experience and anecdotal conversations they claim to have had with other service technicians at the London, Ohio location and vaguely referenced information regarding compensation they claim was discussed at weekly meetings. (*See* Dkt. No. 10-1, ¶¶ 14-16; Dkt. No. 10-2, ¶¶ 16-18.)  From these limited conversations and meetings, Plaintiffs extrapolate that "Defendants had a common company-wide policy of not paying me and other similarly situated service technicians" overtime.  (Dkt. No. 10-1, ¶ 16; Dkt. No. 10-2, ¶ 18.)

Per their own declaratory testimony, Plaintiffs clearly lack foundation to make such broad based allegations, and their broad assumptions are simply incorrect.  Plaintiffs clearly do not have knowledge of the wide variety of compensation plans that vary from location to location and from individual to individual, some of which are overtime eligible plans and some of which are not.  Under such circumstances, Plaintiffs are not similarly situated to other service technicians employed at the London Ohio location who paid pursuant to different compensation

---

[2] *See also Combs v. Twins Grp., Inc.*, 2016 U.S. Dist. LEXIS 172797, at *5 (S.D. Ohio Dec. 14, 2016); *Ouellette v. Ameridial, Inc.*, 2017 U.S. Dist. LEXIS 107952, at *9 (N.D. Ohio July 12, 2017); *Fitzpatrick v. Cuyahoga Cty.*, 2017 U.S. Dist. LEXIS 185280, at *6-7 (N.D. Ohio Nov. 8, 2017)

plans, let alone the hundreds of service technicians at the approximately 130 other locations around the country who were paid pursuant to a variety of compensation plans.  Plaintiffs' motion for conditional certification should clearly be denied when they have not identified any similarly situated individuals affected by a common unlawful policy or practice.  *See Flexter*, 2016 U.S. Dist. LEXIS 188403, *13-14 (denying conditional certification when Plaintiff's declaration contained purely speculative statements and did not establish that Plaintiff had personal knowledge of a common unlawful policy or practice); *Combs*, 2016 U.S. Dist. LEXIS 172797, *7-8 (citing *O'Neal v. Emery Fed. Credit Union*, 2013 U.S. Dist. LEXIS 110383, *8 (S.D. Ohio Aug. 6, 2013) (denying conditional certification and noting that "a plaintiff's declaration must at least allege facts sufficient to support an inference that she has *actual knowledge* about other employees job duties, pay structures, hours worked, and whether they were paid overtime hours."); *Gaffers v. Sitel Worldwide Corp.*, 2016 U.S. Dist. LEXIS 74321, at *9 (M.D. Tenn. June 6, 2016) (denying conditional certification when Plaintiff had no personal knowledge regarding the manner in which other putative collective members were paid).

> **2.    Plaintiffs Have Not Presented Evidence Of A Widespread Unlawful Policy or Practice.**

Plaintiffs also have not identified or presented any evidence of a "widespread" unlawful policy or practice applicable to the hundreds of service technicians they seek to represent.  While Plaintiffs generally allege that they were not paid overtime for hours worked in excess of 40 in a workweek in violation of the FLSA, such generalized statements merely allege a violation and do not identify a common policy or plan applicable to each of the putative class members underlying this alleged violation.  *See Gaffers*, 2016 U.S. Dist. LEXIS 74321, *7 (conditional certification denied when Plaintiff failed to identify specific common compensation policies that were allegedly unlawful); *see Flexter*, 2016 U.S. Dist. LEXIS 188403, *13-14 (same); *Combs*,

2016 U.S. Dist. LEXIS 172797, *7-8 (same). In fact, because of the individualized nature of the service technicians' compensation plans, discussed in detail above, Plaintiffs cannot meet their burden of presenting evidence of a common unlawful plan or policy. Because Plaintiffs have failed to identify any similarly situated individuals or a common unlawful policy or practice applicable to service technicians, they have not met their burden of presenting a factual basis for conditional certification to be granted and notice to issue and their motion should be denied. *Flexter*, 2016 U.S. Dist. LEXIS 188403, at *6-7.

### D.     Defendants Affirmative Defenses Require Individualized Inquiries

Defendants have asserted several affirmative defenses to Plaintiffs' claims, including that Plaintiffs were appropriately classified as exempt from overtime pursuant to 29 U.S.C. § 213(b)(10) ("Section 13(b)(10)) of the FLSA and that Plaintiffs were appropriately compensated pursuant to 207(i) of the FLSA. (*See* Dkt. No. 7, p.12.) Plaintiffs' own declaration testimony highlights that an analysis of each of these defenses must be conducted on an individualized basis.[3]

Section 13(b)(10) of the FLSA exempts any "mechanic primarily engaged in servicing automobiles, trucks or farm implements, if he is employed by a manufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers"

---

[3] Contrary to Plaintiffs' arguments, Defendants are not asking this Court to decide the merits of either their Section 13(b)(10) or Section 207(i) defenses. Rather, Defendants' argument merely highlight the individualized inquiries necessary to determine the merits of their defenses with respect to both Piner and Dingus and with respect to each of the putative collective members with whom they claim they are similarly situated. Plaintiffs have predictably argued that such issues should only be considered at the so-called "second stage," when courts decide whether "disparities between the class members . . . would ultimately break the action down into hundreds of mini-trials," and therefore, require decertification of the collective class. *Deane v. Fastenal Company*, 2013 U.S. Dist. LEXIS 25631, *7-8 (N.D. Cal., Feb. 25, 2013) (despite the resulting litigation costs, "[t]he Court cannot maintain the collective action as a convenience simply because the opt-in plaintiffs may proceed on hundreds of related, but factually distinct misclassification claims."). But there is no logical or rational reason to ignore the record that has already been developed through Plaintiffs' own declaration which dispositively demonstrates the case cannot be managed as a collective action. *See Saleen v. Waste Mgmt.*, 2009 U.S. Dist. LEXIS 49891, *28 ("[N]othing prohibits a court from considering whether a class appears to be manageable as a collective action in considering a motion for conditional certification. . . . [A] collective action is simply a procedural device aimed at facilitating, in an efficient and cost effective way, the adjudication of numerous claims in one action.").

from the overtime requirements of the statute. 29 U.S.C. § 213(b)(10). In their declaration testimony, Plaintiffs both testify that the spent 90 to 95 percent of their work time on "towable trailers" and that they "rarely worked on any mobile homes that had engines." (*See* Dkt. Nos. 10-1, ¶ 6, 10-2, ¶ 6.) This testimony is clearly set forth to support an argument that Section 13(b)(10) did not apply to the Plaintiffs because they claim they were not primarily engaged in servicing automobiles or trucks. Notably, however, Plaintiffs do not purport to have personal knowledge regarding the amount of time other service technicians spent working on towable trailers or motorized vehicles.

Whether Section 13(b)(10) applies to an individual is a ultimately a legal question. *Henriquez v. Total Bike, LLC*, 2013 U.S. Dist. LEXIS 179592, *3-4 (S.D. Fla. Dec. 23, 2013). One legal determination the fact-finder would need to determine for each individual service technician is whether they are "primarily engaged" in servicing "automobiles, trucks or farm implements." *See* 29 U.S.C. § 213(b)(10); 29 C.F.R. § 779.372. Since Plaintiffs do not purport to have personal knowledge regarding whether all service technicians spent the same amount of time they allege they spent working on non-motorized towable trailers, Plaintiffs have cannot have not met their burden of establishing a common unlawful policy or practice linking them to the putative. Rather, they have highlighted the fact that application of Section 13(b)(10) cannot be decided on an collective basis.

Section 207(i) of the FLSA entitles an employer to avoid the overtime obligation under Section 207(a)(1) of the Act with respect to the compensation paid to certain employees of a "retail or service establishment," as long as they individually receive more than half of that compensation in the form of "bona fide" commission payments, and they are paid at least 1.5 times the minimum wage for all hours worked during overtime weeks. 29 U.S.C. § 207(i).

Defendants assert that Section 207(i) applies to any of the service technicians who paid on a flat rate billable hour system who were not overtime eligible, such as the Plaintiffs during period of their employment with FreedomRoads.

Plaintiffs both claim that they were not paid "commissions" in their declarations. (*See* Dkt. Nos. 10-1, ¶ 5, 10-2, ¶ 5.) This statement is clearly aimed at arguing that they were not paid commissions pursuant to 207(i). Again, they notably do not purport to have personal knowledge regarding whether other service technicians were paid "commissions." Despite Plaintiffs' conclusory claim, Courts have routinely found that flat rate billable hours payment plans such as the plans that Plaintiffs were compensated under at times during their employment with FreedomRoads are compliant with Section 207(i). *See, e.g., Yi v. Sterling Collision Ctrs., Inc.*, 480 F.3d 505, 509 (7th Cir. 2007); *Henriquez*, 2013 U.S. Dist. LEXIS 179592, *8-14; *Herrera v. TBC Corp.*, 18 F. Supp. 3d 739, 740-48 (E.D. Va. 2014).

Application of 207(i) inherently requires "a highly individualized defense because its application requires week-by-week and other periodic calculations . . . specific to each individual Plaintiff and his or her particular circumstance." *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1126 (N.D. Cal. 2011) (quoting *Johnson v. TGF Precision Haircutters, Inc.*, 2005 U.S. Dist. LEXIS 44259, *27 (S.D. Tex., Aug. 17, 2005)). In this case, in order to determine whether 207(i) applied to each individual service technician, a factfinder would first need to determine whether each service technician under a flat rate system that would constitute "bona fide" commissions for purposes of 207(i). *Beauperthuy*, 772 F. Supp. 2d at 1126-27. From there, the factfinder would need to examine each service technicians' payroll records to determine whether, for each workweek, the individual service technicians were paid over fifty percent of their compensation in the form of bona fide commissions, and that the earned at least

1.5 times the applicable minimum wage, a determination that is dependent on each individual's claims regarding their work hours. *See Beauperthuy*, 772 F. Supp. 2d at 1126. Given the inherent, week-to-week individual inquiry necessitated by Section 207(i), Plaintiffs' motion for conditional certification should be denied. *See id.*

**E. The Notice Process Must Be Managed in Consideration of All Parties' and Non-Parties' Legitimate Interests.**

**1. The Court Retains Broad Authority Over the Notice Process.**

The supervision of the notice process is committed to the broad discretion of the Court. *Hoffman-LaRoche*, 493 U.S. at 171 (courts have "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way."); *Douglas v. GE Energy Reuter Stokes*, 2007 U.S. Dist. LEXIS 32449, *5 (N.D. Ohio, April 7, 2007) ("Courts have considerable discretion in crafting procedures through which to exercise their managerial responsibilities pursuant to §216(b)"). The purpose of this process is to provide notice to those individuals who the Court may deem to be "similarly situated" to the Plaintiff, and explain the process by which they may join this litigation. *Nothing more*.

Accordingly, Defendants request that the Court limit the information that they are compelled to disclose to Plaintiffs' counsel to facilitate notice to (1) names; (2) last known addresses; and (3) dates of employment in the service technician position. Defendants further request that the Court set strict parameters to clearly define the manner in which this personnel data may be used. The Court should (1) restrict Plaintiffs' use of the data for the sole purpose of sending notice of this litigation only; (2) restrict Plaintiffs' communications with potential opt-ins to issuance of an approved notice by United States mail, on one occasion only; and (3) restrict Plaintiffs' written communications with potential opt-in class members to the approved notice. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 164 F.R.D. 574, 576 (M.D. Fla. 1996)

(authorizing use of employee addresses for purposes of issuing written notice on one occasion, stating that "any other communication between the Plaintiffs or their counsel and these sought after parties is strictly prohibited[.]").

<ol start="2" type="1">
<li>**The Court Should Not Order the Disclosure of Employees' Private Information to Facilitate Notice.**</li>
</ol>

<ol type="a">
<li>**Plaintiff Has Not Demonstrated Any Need for Telephone Numbers.**</li>
</ol>

The preferred method of informing potential litigants regarding a pending wage and hour case has always been by first-class mail. *See Hinterberger v. Catholic Health Sys.*, 2009 U.S. Dist. LEXIS 97944 (W.D.N.Y., October 21, 2009) (collecting cases). The names and last known addresses for service technicians employed within the last three years is all that is required to facilitate notice; Defendants should not be compelled to produce more information, especially private personnel information, regarding these current or former employees. Certainly, the subjects of this data have a legitimate interest in the protection of private identifying or contact information, and they had no reason to expect that it would be provided to a private law firm when the data was disclosed to their employer as part of personnel processes.

Plaintiff has made no showing that last known addresses will be insufficient to provide reasonable notice to the class, and therefore, his requests for the telephone numbers should be denied. *See Swigart v. Fifth Third Bank,* 276 F.R.D. 210, 215 (S.D. Ohio 2011) (granting plaintiff's request for judicial notice, concluding that "[t]he Court will not, however, order [Defendant] to produce to Plaintiffs any personal information about putative collective class members other than their names, last known addresses, dates of employment, and for those [employees] no longer employed by Fifth Third, the last known email address.") *see also Harvey v. AB Electrolux*, 2012 U.S. Dist. LEXIS 31507, *13-14 (N.D. Iowa, Mar. 9, 2012) (denying request for telephone numbers); *Ritzer v. UBS Fin. Servs. Inc.,* 2008 U.S. Dist. LEXIS 71635, at

*3 (D.N.J. Sept. 22, 2008) ("Unless notification via first class mail proves insufficient . . . telephone numbers should not be released.").

### b. Private Email Addresses Should Only Be Disclosed If Necessary to Accomplish Notice.

Plaintiff has also requested private email addresses for all employees. Defendants acknowledge that this Court has permitted the disclosure of private email addresses for former employees in certain cases, recognizing that this process ensures that potential plaintiffs receive at least one copy of the notice. *See Swigart*, 276 F.R.D. at 215; *Lewis v Huntington Nat'l Bank*, 2011 WL 8960489, *2 (S.D. Ohio June 20, 2011). Other courts have denied requests to notify potential class members by email, citing concerns about distortion or misleading notification through modification of the notice itself or the addition of commentary. *See*, *e.g.*, *Espenscheid v. DirectSat USA, LLC*, 2010 U.S. Dist. LEXIS 55578, 40 (W.D. Wis., June 7, 2010) (agreeing "with the reasoning of the courts suggesting caution be used in allowing email notification because of the potential for recipients to modify and re-distribute email messages.").[4]

If Plaintiffs establish that home addresses that are produced to facilitate notice are *not* accurate, Defendants do not object to providing those individuals' email addresses, to the extent this information is even maintained in its corporate records. Until such time that there is some reasonable basis beyond speculation (such as returned mail) to conclude that any putative class member cannot be reached by U.S. mail at a last known address, however, Plaintiffs have not established any reason, much less a compelling one, to require disclosure of additional private data, including personal email addresses.

---

[4] *See also Hinterberger*, 2009 U.S. Dist. LEXIS 97944; *Kuznyetsov v. West Penn Allegheny Health System, Inc.*, 2009 U.S. Dist. LEXIS 47163 (W.D. Penn., June 1, 2009) (quoting *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 630 (D. Colo. 2002)); *Gordon v. Kaleida Health*, 2009 U.S. Dist. LEXIS 95729 (W.D.N.Y., Oct. 14, 2009); *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 91 (E.D.N.Y. 2007).

**3.    "Reminders" Are Intended to Market This Litigation, Not Provide Notice.**

Plaintiff's proposal to send a "reminder" to the putative class has been rejected by many, many courts – including this Court -- that reasonably recognize the narrow line that divides advising potential opt-in plaintiffs of the existence of the lawsuit – and encouraging participation.  These courts restrict judicially-approved notice accordingly, "[m]indful of [their] discretionary role in prescribing the terms and conditions of communications from the named plaintiffs to the potential members of the class[.]"  *Foster v. Nationwide Mutual Insurance Co.*, Case No. C2-08-020, Order, Doc. 20 (U.S. Dist. Ct., S.D. Ohio) (Sargus, J.) (quoting *Hoffman LaRoche*, 493 U.S. at 169) (denying Plaintiff's counsel's request for a "reminder" letter) (attached as Exhibit A to Declaration of John H. Lassetter); *see also Fairfax v. Hogan Transp. Equip., Inc.*, 2017 WL 4349035, at *7 (S.D. Ohio Sept. 29, 2017) (internal citations omitted). ("recognizing the narrow line that divides advising potential opt-in plaintiffs of the existence of the lawsuit-and encouraging participation.").  As Judge Crabb noted in *Witteman v. Wisconsin Bell*, where Plaintiff's counsel made the same request:

> I agree that the reminder is unnecessary and potentially could be interpreted as encouragement by the court to join the lawsuit.  The purpose of notice is simply to inform potential class members of their rights.  Once they receive that information, it is their responsibility to act as they see fit.

2010 U.S. Dist. LEXIS 8845, *9 (W.D. Wis., February 2, 2010).

Once the members of the prospective collective class are aware of the litigation, "reminders" or other forms of communication with prospective members of the collective action serve no legitimate purpose.  The Court need not "remind" putative class members of their right to sue.  Here, Plaintiff's proposed notice accomplishes the purpose authorized by *Hoffman-LaRoche*:  the procedure will ensure that members of the prospective class receive formal court-

authorized notice of these proceedings. Any further communication with potential opt-in class members beyond the issuance of written notice would, when combined with reference to such judicially-authorized communications, implicitly involve the Court in the encouragement of litigation, which *Hoffman-LaRoche* certainly does not contemplate. *See* 493 U.S. at 181 (Scalia, J., dissenting) ("'Stirring up litigation' was once exclusively the occupation of disreputable lawyers, roundly condemned by this and all American courts."); *Calderon v. Geico Ins. Co.*, 2011 U.S. Dist. LEXIS 2815, *23 (D. Md. Jan. 12, 2011) ("Plaintiffs' request to send reminder notices has the potential to unnecessarily stir up litigation, and will therefore be denied." [internal quotation omitted]).[5]

---

[5] Should the Court grant Plaintiffs' motion, Defendants respectfully request an opportunity to address the substance of Plaintiffs' proposed notice and consent form with the Court before those documents are distributed to the putative collective members.

## V.  CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiffs' motion for conditional certification and that the Court grant Defendants' motion to stay these proceedings.

Date:                                                            Respectfully submitted,


*/s/ Michael T. Short*
Michael T. Short (0069409)
mshort@littler.com
LITTLER MENDELSON, P.C.
21 East State Street
16th Floor
Columbus, OH  43215
Telephone: 614.463.4201
Facsimile: 614.221.3301


Andrew J. Voss (MN #0241556)
avoss@littler.com
*Admitted Pro Hac Vice*
John H. Lassetter (MN #0389009)
*Admitted Pro Hac Vice*
LITTLER MENDELSON, P.C.
1300 IDS Center
80 S. 8th Street
Minneapolis, MN 55402
Telephone:  612.630.1000

Attorneys for Defendants
FREEDOMROADS, LLC, CAMPING
WORLD, INC., AND SIRPILLA RV
CENTERS, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2018, foregoing *Defendants' Memorandum In Response To Plaintiffs' Pre-Discovery Motion For Conditional Class Certification And Court-Supervised Notice To Potential Opt-In Plaintiffs Pursuant To 29 U.S.C. §216(b)* was filed via the Court's electronic filing system. Notice of filing will be performed by the Court's electronic filing system, and Parties may access the document through the electronic filing system.

*/s/ Michael T. Short*

Michael T. Short

Firmwide:153220380.1 064774.1138